IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ELIZABETH A. WALLACE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:12-CV-0709-LSC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Elizabeth A. Wallace, brings this action pursuant to the provisions of 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for disability insurance benefits and Supplemental Security Income. Wallace timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 42 U.S.C. § 405(g). Based on the Court's review of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be affirmed.

### I. STANDARD OF REVIEW

The sole function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal

standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. This court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Id*. Even if the court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Id.*

Unlike the deferential review standard applied to the Commissioner's factual findings, the Commissioner's conclusions of law are not presumed to be valid. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Therefore, the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). This includes the Commissioner's application of the proper legal standards in evaluating Wallace's claim. *Martin*, 894 F.2d at 1529.

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

Social Security regulations outline a five-step process that is used to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). The Commissioner must determine in sequence:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment or combination of impairments;

(3) whether the claimant's impairment meets or equals the severity of an impairment in the Listing of Impairments;[1]

(4) whether the claimant can perform any of his or her past work; and

(5) whether there are significant numbers of jobs in the national economy that the claimant can perform.

*Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178 (11th Cir. 2011). The evaluation process continues until the Commissioner can determine whether the

---

[1] The Listing of Impairments, ("Listings") found at 20 C.F.R. Part 404, Subpart P, Appendix 1, are used to make determinations of disability based upon the presence of impairments that are considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525.

claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who is doing substantial gainful activity will be found not disabled at step one. 20 C.F.R. §§ 404.1520 (a)(i), 416.920(a)(4)(i). A claimant who does not have a severe impairment will be found not disabled at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A claimant with an impairment that meets or equals one in the Listing of Impairments will be found disabled at step three. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

Prior to considering steps four and five, the Commissioner must assess the claimant's residual functional capacity (RFC), which will be used to determine the claimant's ability to work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant who can perform past relevant work will be found not disabled at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five the burden shifts to the Commissioner to show other work the claimant can do. *Foot v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). To satisfy this burden the Commissioner must produce evidence of work in the national economy that the claimant can do based on the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(f), 416.912(f). A claimant who can do other work will be found not disabled at step five. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920 (a)(4)(v). A claimant who cannot do other work will be found disabled. *Id.*

In the present case, the Administrative Law Judge (ALJ) determined Wallace was not engaged in substantial gainful activity. R. 19. He found Wallace did not have a severe impairment at step two. R. 20. Therefore, the ALJ found she was not disabled. R. 22.

### III. FACTUAL BACKGROUND

Wallace filed applications for a period of disability, disability insurance benefits, and Supplemental Security Income (SSI) on January 27, 2009, and alleges she became disabled on April 1, 2008. R. 17. Wallace was 56 years old at the time of the ALJ's decision. R. 23, 36. She testified at the hearing that she could not work because of pain in her back and neck, and shortness of breath. R. 37-39. She also testified that she had fallen five times the year before her hearing, and could hardly walk. R. 37. She testified that she began having shortness of breath in June of 2009, and that it was getting worse. R. 43. She testified she had shortness of breath "just about every day." R. 43.

The record contains treatment records from before Wallace's alleged onset date that are not relevant to her current disability claim. Also prior to Wallace's alleged onset date a lumbar x-ray in October 2007 revealed mild degenerative joint disease (DJD). R. 280.

On May 22, 2008, Wallace was seen at the emergency room (ER) complaining of right foot pain after a fall approximately one month previously. R. 217. An x-ray showed "possible mild calcific tendinosis of the Achilles [tendon]," and "[m]ildly

5

prominent enthesophyte at the plantar fascia insertion site on the calcaneus." R. 217. Wallace was prescribed a walking boot and pain medication. R. 222-23. Otherwise, physical examination of the joints, neck, and back was normal, except that she had an antalgic gait. R. 227. Wallace had no symptoms of COPD or asthma. R. 222, 227. Wallace was noted to have a history of hernia and restless leg syndrome (RLS). R. 226.

On January 7, 2009, Community Free Clinic records show Wallace complained of lightheadedness and shakiness due to hypoglycemia. R. 276. She reported eating candy. R. 276. She was instructed to eat frequent small meals and refrain from eating sugar. R. 276. All other findings were normal. R. 276. She returned on January 21, 2009, with a rash on the palm of her right hand and a "stuffy nose." R. 275. She had not experienced any further dizzy spells. R. 275. On February 18, 2009, Wallace was seen at the Community Free Clinic with complaints of heel pain. R. 314. It was noted that she had not gotten lab work or an MRI that had been recommended to assess her frequent falls. R. 314.

On March 31, 2009, Wallace was treated in the ER for complaints of shoulder, neck, and upper back pain. R. 295. She reported the pain had started 10 hours previously while she was sleeping. R. 295. Wallace also reported she had been riding a bicycle approximately two hours earlier, and was injured when she fell and hit the pavement. R. 295. She reported that she had also fallen three weeks previously. R.

296. She reported that she had fallen multiple times over the past few years, although the March 2009 fall was the first one that year. R. 295-296. The examination by Dr. Fialkowski showed a normal gait and negative straight leg raising tests. R. 297. Dr. Fialkowski found a full range of motion in the neck with no tenderness. R. 297. There was no decreased range of motion or tenderness in the extremities. R. 297. He found mild tenderness in the back, but with full range of motion and no spasm. R. 297. On physical examination, Wallace's lungs were clear, with no wheezing, rales, or rhonchi. R. 297. Although Wallace complained of slurred speech, it was noted that her speech was clear when she was at the ER. R. 295.

On April 23, 2009, Wallace returned to the ER with facial pain and acute sinusitis. R. 282-286. Her physical examination showed no symptoms of COPD or asthma. R. 285. She was found to have a broken tooth. R. 286. On May 12, 2009, Wallace was seen in the ER complaining of high blood pressure with lightheadedness, mild headache, numbness, and tingling. R. 350-351. She was noted to have multiple somatic complaints, but had a normal physical examination and a normal gait. R. 351-52. Her lungs were clear, with no wheezing, rales, or rhonchi. R. 352. She was diagnosed with a toothache and hypertension R. 352.

Wallace was seen at the Community Free Clinic on June 10, July 8, September 2, and September 30, 2009, for follow-up treatment, and to obtain refills on her medications. R. 310-313. On June 10, Wallace reported some depression, stress, and

an episode of increased blood pressure. R. 313. On July 8, her blood pressure medications were adjusted. R. 312. On September 2, a few wheezes were noted on physical examination. R. 311. On September 30, Wallace complained of sinus congestion, and there was occasional wheezing on physical examination. R. 310.

On November 11, 2009, Wallace presented to the ER with an exacerbation of her COPD and acute bronchospasm. R. 345. A chest x-ray showed clear lungs. R. 346. Dr. Brooks examined Wallace and found moderate wheezing. R. 343.However, her lungs were clear, with no rales or rhonchi. R. 343. Significant improvement was noted with nebulizer treatment and she was discharged. R. 344.

On January 20, 2010, Wallace visited the Community Free Clinic. R. 309. Her blood pressure was noted to be controlled, and exercise was recommended. R. 309.

On February 9, 2010, Wallace was seen in the ER with the chief complaint being dyspnea, initiated by an upper respiratory infection that began two hours previously. R. 324. She also complained of a mild nonproductive cough. R. 320. Chest x-rays were normal. R. 331. After a nebulizer treatment, Wallace's symptoms improved, but she was still wheezing. R. 326. At that time, her chief complaint was pain with turning her neck from side to side. R. 326.

On April 14, 2010, Wallace was seen at the Community Free Clinic. R. 308. The reasons for her visit included left foot pain. R. 308. The physical examination showed Wallace's lungs were clear, and she was not tender to palpation. R. 308.

## IV. ISSUES PRESENTED

Wallace argues the ALJ's finding that she did not suffer from a severe impairment at step two was not based upon substantial evidence.

## V. DISCUSSION

The ALJ found Wallace had moderate obesity, mild COPD, mild degenerative disc disease, and hypertension, which he found to be medically determinable impairments. R. 19. However, he found these impairments were not severe. R. 20. While the ALJ found Wallace's medically determinable impairments could reasonably be expected to produce the symptoms she alleged, he found her allegations about her symptoms were not credible. R. 21. Wallace argues this finding was not based on substantial evidence, and that the ALJ should have ordered a consultative examination to obtain medical source opinion that would have assisted him in determining the extent of Wallace's symptoms. Pl.'s Br. 6-8.

Wallace bears the burden of showing that she has a severe impairment or combination of impairments. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir.1999). An impairment is not severe if it does not significantly limit one's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Examples of basic work activities include physical functions such as walking, standing, sitting, lifting, reaching, and carrying. 20 C.F.R. § 404.1521(b). To be found severe, Wallace's impairments must cause "more than a minimal limitation on a [her] ability to function." *Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir.1993). The inquiry at step

two "allows only claims based on the most trivial impairments to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir.1986). To be found not severe, the impairment must be "so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work." *Id.*

In this circuit a "pain standard" is applied "when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). The standard requires a claimant to show "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F. 2d 1551, 1553 (11th Cir. 1986). "[W]hether objective medical impairments could reasonably be expected to produce the pain complained of is a question of fact . . . subject to review in the courts to see if it is supported by substantial evidence." *Id.*

"[A] claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id.* However, the ALJ's credibility determination need not cite "particular phrases or

formulations" as long as it enables the court to conclude that the ALJ considered the claimant's medical condition as a whole. *Foote*, 67 F.3d at 1562. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.*

In the present case, the ALJ found Wallace's medically determinable impairments could reasonably be expected to produce her alleged symptoms. R. 21. However, he found her allegations were not credible, and concluded that the medical record did not show Wallace had "significantly limiting impairments." R. 21. The ALJ observed that although Wallace alleged she was unable to work because of back pain, "the only objective evidence is lumbar x-rays [sic] in October 2007 showing no more than 'mild' [degenerative joint disease]." R. 22. The ALJ noted that when Wallace did complain of back pain, the treatment records "consistently note 'normal physical examinations' with normal range of motion, no spasm, normal gait, and normal straight leg raise." R. 22.

Concerning Wallace's allegations of shortness of breath, the ALJ commented that the "first notation of COPD [was] in November 2009, almost 2 years after her alleged onset, and chest x-rays show[ed] clear lungs and normal heart size with only minimal wheezing, but no rales or rhonchi." R. 22. The ALJ noted that "[p]rior to that time, there was no indication of shortness of breath, wheezing, or chest pain." R. 22.

He observed that the most recent examination in April 2010 was essentially normal. R. 22.

The ALJ found that the only evidence of foot pain was in May 2008, when she was diagnosed with Achilles tendinosis and prescribed a walking boot.[2] R. 22. He observed Wallace testified "the foot pain has improved with the boot and is consistent with the records which show an antalgic/normal gait and no complaints of foot pain until April 2010. However, even then, there were only complaints of foot pain, but no specific symptoms and limitations." R. 22.

The ALJ also emphasized that "though she claims to experience significant symptoms and limitations, no physician has restricted her activities or opined she is unable to work due to her impairments." R. 22. He noted Wallace "testified that she could not work because of difficulty concentrating, but nowhere in the record does it suggest she has difficulty concentrating." R. 22.

Ultimately, the ALJ relied upon the absence of findings on physical examination and her sporadic treatment history to find Wallace's impairments caused no more than a minimal limitation on her ability to perform work related activities. In his discussion of the medical evidence, the ALJ emphasized Wallace's essentially

---

[2] It appears the ALJ meant the May 2008 treatment records contained the only "objective" evidence of a foot impairment, as he recognized the April 2010 treatment note indicated Wallace presented with complaints of left foot pain. There were also complaints of heel pain on February 18, 2009, and foot pain on July 8, 2009. R. 314, 312.

normal back examinations in May 2008, January 2009, March 2009, April 2009, May 2009, and April 2010. R. 19-20. The ALJ also observed that on the two occasions when Wallace reported to the ER with exacerbations of her COPD, her lungs were clear with no rales or rhonchi found on examination. R. 20. The ALJ concluded by explaining that his finding of no severe impairment "is supported by the sporadic conservative treatment with varying complaints and treatment records consistently showing normal examinations." R. 22.

The ALJ gave reasons for finding Wallace's allegations were not credible, and that she did not suffer from a severe impairment. Those reasons are supported by substantial evidence. Because this court does not reweigh the evidence, there is no reversible error in the ALJ's step two finding.

Wallace also argues the ALJ should have ordered a consultative examination to ascertain the extent of her limitations. The regulations provide that the ALJ may ask the claimant to attend a consultative examination if the treating sources do not provide sufficient medical evidence to allow a determination of whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917. A consultative examination is normally required only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources. *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001).

In the present case, the record was sufficient for reaching a decision, and an additional examination was unnecessary. There were numerous treatment notes from the relevant period of time, which allowed the ALJ to determine the extent of Wallace's impairments, and their impact on her ability to work. Therefore, the ALJ did not err in failing to obtain a consultative evaluation.

## VI. CONCLUSION

The Court concludes the ALJ's determination that Wallace is not disabled is supported by substantial evidence, and that the ALJ applied the proper legal standards in arriving at this decision. Accordingly, the Commissioner's final decision is due to be affirmed. An appropriate order will be entered.

Done this 5th day of February 2014.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
174256